UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EBIPAMONE N. NANAKUMO,

                              Plaintiff,

     -against-

NEW YORK CITY HEALTH & HOSPITALS
CORPORATION, DR. MITCHELL KATZ,
DR. JOSE A. PAGAN, YVETTE
VILLANUEVA, CHRISTOPHER ROKER,
AND BARBARA MARRERO,

                              Defendant.

23-cv-00314 (ALC)

OPINION & ORDER

ANDREW L. CARTER, JR., United States District Judge:

     Plaintiff Ebipamone N. Nanakumo brings this *pro se* employment discrimination action

against New York City Health & Hospitals Corporation ("H+H") and Dr. Mitchell Katz, Dr. Jose

A. Pagan, Yvette Villanueva, Christopher Roker, and Barbara Marrero (the "Individual

Defendants" and with H+H, collectively, the "Defendants") alleging:  (1) a religious

discrimination claim under Title VII of the Civil Rights of 1964 ("Title VII"), 42 U.S.C. § 2000e

et seq.; (2) a national origin discrimination claim under Title VII of the Civil Rights of 1964

("Title VII"), 42 U.S.C. § 2000e et seq.; (3) a religious discrimination claim under the New York

State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq.; (4) a religious

discrimination claim under the New York City Human Rights Law ("NYCHRL"), N.Y.C.

Admin. Code § 8-101 et seq.; (5) a religious accommodation claim; (6) a hostile work

environment claim under Title VII; (7) a hostile work environment claim under the NYSHRL;

(8) a hostile work environment claim under the NYCHRL; (9) claims under Section 11 of Article

I of the New York State Constitution; (10) U.S. constitutional claims under Article VI and the

First, Fifth, and Fourteenth Amendments; and (11) claims under the Religious Freedom

Restoration Act of 1993 ("RFRA").

Defendants now move for dismissal of Plaintiff's Fourth Amended Complaint under Rule

12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff filed a request for sanctions against

Defendants because Defendants allegedly made—and failed to retract—false claims in their

reply brief. After careful review, Defendants' motion, ECF No. 46, is **DENIED** in part and

**GRANTED** in part. Plaintiff's request for sanctions, ECF No. 61, is **DENIED**.

BACKGROUND

## I.   Factual Background

Unless otherwise indicated, the following facts are drawn from Plaintiff's Fourth

Amended Complaint ("FAC") and a supplement to the Fourth Amended Complaint ("FAC

Supp.").[1] The Court also considers Plaintiff's Charge of Discrimination filed with the United

States Equal Employment Opportunity Commission ("EEOC") dated June 15, 2022 and H+H's

related Position Statement dated July 21, 2022.[2]

Plaintiff is a naturalized United States citizen who designates Nigeria as his country of

origin and who adheres to the Christian faith. FAC Supp. at 3, 7. Plaintiff was an employee of

H+H from April 3, 2006 until his separation on November 28, 2021. *See* FAC at 1; Declaration

of Sabrina T. Smith ("Smith Decl."), Ex. B, ECF No. 46-4 at 3. H+H "operates healthcare

---

[1] Plaintiff submitted the FAC and FAC Supp., along with other attachments, to the Court via email on March 7, 2024. Neither document was filed to the docket, but Court nonetheless considers the documents to have been filed.
[2] The Court may consider these documents in ruling on Defendants' motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (court resolving motion to dismiss may consider: (1) documents that plaintiff attached to the pleadings; (2) documents to which plaintiff referred in the complaint; (3) matters of which judicial notice may be taken; (4) documents in plaintiff's possession; and (5) documents of which plaintiff had knowledge and upon which plaintiff relied in bringing the action); *Lakonia Management Ltd. v. Meriwether*, 106 F. Supp. 2d 540, 543 (S.D.N.Y. 2000); *see* FAC Supp. at 55–56 (attaching among other things Plaintiff's EEOC Charge of Discrimination and H+H's Position Statement).

facilities in all five boroughs, providing general, chronic, ambulatory and skilled nursing care, and a wide variety of specialized patient care services."  Smith Decl., Ex. B, ECF No. 46-4 at 2.

Plaintiff began his employment with H+H as an Assistant Director of the Utilization Management Department of Lincoln Hospital on April 3, 2006, making him a "permanent managerial cadre" employee of H+H.  FAC Supp. at 1.  In this role, Plaintiff reviewed medical records, attended planning meetings where patient treatment plans were evaluated, and assisted in supervising a team of 10 to 15 individuals supporting the utilization department.  Smith Decl., Ex. B, ECF No. 46-4 at 2.  Plaintiff was required to work on-site at Lincoln Hospital to carry out his essential duties because his department's functions were not amenable to remote work and because the department's electronic record system could only be accessed at Lincoln Hospital. *Id.*

In this role, Plaintiff experienced "unconscionable marginalization, victimization and exploitation," which included not being put up for promotion.  FAC at 3.  Plaintiff further alleges that he was subject to "an utterly hostile work environment" for most of his employment on account of his "national origin and sincerely held religious beliefs[.]"  *Id.* at 5.

Central to Plaintiff's claims of national origin-based discrimination are allegations that a former H+H Director of the Utilization Department, Fe Baun, discriminatorily delegated managerial authority to the department's non-managerial employees and subverted Plaintiff's role and prospective promotion.  FAC Supp. at 3–5.  Baun, a Filipino, allegedly delegated authority to an all-Filipino group of non-managerial staff to the detriment of Plaintiff.  *See id.* at 3.  Baun also coordinated the transfer of a Filipino employee from another hospital to Lincoln Hospital, where the transferee began working as an Assistant Director of the Utilization Department.  *Id.* at 4.  Plaintiff contends that the addition of another Assistant Director prevented

Plaintiff from functioning in his capacity as Assistant Director and "prevent[ed] [his] ascendancy to become the Director of the Utilization Management Department upon [Baun]'s retirement." *Id.* at 4.

In 2015, shortly before Baun retired from the department, Baun expressed to others her desire and intent to prevent Plaintiff from succeeding her as Director of the Utilization Department. *Id.* At Baun's retirement, Baun told Plaintiff "They refuse to promote you. You have to transfer to another hospital to be promoted." *Id.* After Baun's retirement, Plaintiff continued to work as an Assistant Director until January 1, 2020, when he began serving as acting Director despite retaining his title of Assistant Director. *Id.* at 5.

Plaintiff's religion-based discrimination claims stem from H+H's COVID-19 vaccine policies. On August 26, 2021, the New York State Department of Health enacted an emergency rule requiring healthcare facilities to ensure that certain personnel were vaccinated against COVID-19 on or before September 27, 2021. *See* 10 N.Y.C.R.R. § 2.61 (Aug. 26, 2021) ("Section 2.61"); *see also We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 274 (2d Cir. 2021), *opinion clarified,* 17 F.4th 368 (2d Cir. 2021), *cert denied*, *Dr. Av. Hochul*, 142 S. Ct. 2569 (2022). As a healthcare facility, H+H was required to comply with Section 2.61, which defined "personnel" as:

> all persons employed or affiliated with a covered
> entity, whether paid or unpaid, including but not
> limited to employees, members of the medical and
> nursing staff, contract staff, students, and volunteers,
> who engage in activities such that if they were
> infected with COVID-19, they could potentially
> expose other covered personnel, patients or residents
> to the disease.

*See* 10 N.Y.C.R.R. § 2.61(a)(2).  Section 2.61 included certain medical exemptions but no exemptions for religious beliefs.  *See* 10 N.Y.C.R.R. § 2.61(d)(1) ("If any licensed physician . . . certifies that immunization with COVID-19 vaccine is detrimental to the health of a covered entity's personnel, based on a pre-existing health condition, the requirement of this section relating to COVID-19 immunization shall be inapplicable only until such immunization is found no longer to be detrimental to such personnel member's health.").

On September 24, 2021, H+H published an internal Frequently Asked Questions ("FAQs") guide for its staff to assist with the implementation of the vaccine mandate in which H+H explained that personnel were required to have received the first dose of an approved COVID-19 vaccine before September 27, 2021.  *See* Smith Decl., Ex. B, ECF No. 46-4 at 6. H+H provided for medical as well as religious exemptions to the mandate and H+H's Office of Equal Employment Opportunity ("EEO Office") reviewed exemption requests submitted to an online portal.  *Id.*  H+H's FAQs noted that any accommodation, if granted, would not allow unvaccinated personnel to work on-site and clarified that the use of a face covering or other personal protective equipment would not be considered an accommodation.  *Id.*

On August 25, 2021, Plaintiff sought an exemption from the vaccine mandate on an unspecified basis.  *Id.* at 7.  On or around September 13, 2021, Plaintiff submitted a request for a religious exemption in which he objected to taking any COVID-19 vaccine based on his religious beliefs.  *Id.*  On September 23, 2021, Plaintiff was notified that his exemption request was granted but that there were no available reasonable accommodations that could permit him to perform his essential job duties.  *Id.* at 8.  Plaintiff was given a job-protected leave of absence without pay for a period of 60 days—September 27, 2021 through November 26, 2021—as a reasonable accommodation and Plaintiff was notified that H+H's EEO Office would evaluate

whether the accommodation could be extended without undue hardship to H+H.  *Id.*  On November 16, 2021, Plaintiff was notified that H+H's EEO Office determined that H+H could not extend his approved leave beyond November 26, 2021 without causing undue hardship.  *Id.*

On November 18, 2021, Plaintiff submitted an email requesting a medical exemption to the vaccine mandate.  *Id.*  Plaintiff's medical documentation dated September 11, 2021 did not note any pre-existing conditions; it simply noted Plaintiff's reporting that he had a history of "severe adverse reactions to the Flu vaccine."  *Id.* (internal quotation marks omitted).  Plaintiff's request was reviewed by a medical review committee made up of doctors and the EEO Office. *Id.*  The review committee ultimately found that Plaintiff did not qualify for a medical exemption because self-reported non-life-threatening symptoms associated with another vaccine did not meet the criteria for excusing the COVID-19 vaccination requirement.  *Id.*  On or around November 19, 2021, Plaintiff was informed that his medical exemption was denied.  *Id.*  On November 28, 2021, Plaintiff was notified of his separation from employment with H+H for failing to comply with H+H's vaccine mandate.  *Id.*

Plaintiff claims that Dr. Mitchell Katz, Dr. Jose A. Pagan, and Yvette Villanueva were "directly and ultimately responsible for promulgating and enforcing all the policies and managerial decisions of New York City Health & Hospitals Corporation."  *See* FAC Supp. at 36. Plaintiff also included Christopher Roker because he is "an officer and representative of [the] employer" who "has to enforce the NYS and Federal Government (CMS) Vaccine Mandate for Healthcare Workers."  *See id.* at 35.  Plaintiff further alleges that Barbara Marrero sent an email detailing Plaintiff's relief from duty which constituted "prima facie evidence of a hostile work environment."  *Id.* at 36.

## II.    Procedural History

Plaintiff initiated this action on January 12, 2023 by filing a request to proceed *in forma pauperis* and by filing his initial Complaint. ECF Nos. 1–2. On January 17, 2023, Plaintiff was granted leave to proceed in Court without paying a filing fee. ECF No. 4. On January 25, 2023, Plaintiff filed an Amended Complaint. ECF No. 5. On March 6, 2023, Judge Swain found that Plaintiff's claims—with the exception of his employment discrimination claim against H+H under Title VII, the NYSHRL, and the NYCHRL—were frivolous and were dismissed. ECF No. 6 at 7. Judge Swain granted Plaintiff leave to replead limiting Plaintiff to only his employment discrimination claims. *Id.* at 6 ("Plaintiff may assert employment discrimination claims under Title VII and city and state law human rights laws only against his former employer, H+H. The complaint does not contain any facts suggesting that any of the individuals named as defendants were employed by H+H or directly participated in discriminatory conduct.").

On May 8, 2023, Plaintiff filed another so-titled Amended Complaint. ECF No. 7. On July 4, 2023, Judge Swain again dismissed the Amended Complaint because it failed to comply with Judge Swain's March 6, 2023 order and again granted Plaintiff leave to replead only the employment discrimination claims against H+H. ECF No. 8 at 3 ("The amended complaint does not comply with the March 6, 2023 order, which granted Plaintiff leave to replead only his employment discrimination claim against his former employer. Instead, Plaintiff names multiple defendants who were not Plaintiff's employer, and reasserts claims that the Court previously dismissed as frivolous."). On August 6, 2023, Plaintiff filed a Second Amended Complaint. ECF No. 9. On August 30, 2023, Plaintiff filed a Third Amended Complaint. ECF No. 15.

On February 1, 2024, the Court granted Plaintiff leave to file a FAC by March 7, 2024. ECF No. 33. On March 7, 2024, Plaintiff filed a FAC. *See supra* note 1. On May 6, 2024, Defendants filed a motion to dismiss the FAC. ECF No. 46. On May 31, 2024, Plaintiff filed his

opposition to the motion to dismiss.  ECF No. 51.  On June 11, 2024, Plaintiff filed a corrected

memorandum.  ECF No. 54.  On July 11, 2024, Defendants filed their reply.  ECF No. 60.

On July 31, 2024, Plaintiff also filed a request for sanctions against Defendants alleging

that they made false claims in their briefing.  ECF No. 61.  On August 8, 2024, Defendants filed

their opposition.  ECF No. 65.  On August 15, 2024, Plaintiff filed his reply.  ECF No. 66.

### STANDARD OF REVIEW

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual

allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."

*Faber v. Metro. Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and

citations omitted).  Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  However, the court need not credit "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.

The Court's function on a motion to dismiss is "not to weigh the evidence that might be

presented at a trial but merely to determine whether the complaint itself is legally sufficient."

*Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

Additionally, "[a] document filed *pro se* is to be liberally construed, and a *pro se*

complaint, however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted)

(internal quotations omitted).  In particular, "the pleadings of a *pro se* plaintiff . . . should be

interpreted to raise the strongest arguments that they suggest."  *Graham v. Henderson*, 89 F.3d

75, 79 (2d Cir. 1996) (internal quotations omitted).  *Pro se* status, however, "does not exempt a

8

party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (citations omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that a *pro se* complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted).

## DISCUSSION

Plaintiff submits various employment discrimination claims under federal law, the NYSHRL, and the NYCHRL. As a threshold matter, the Court dismisses Plaintiff's claims under Section 11 of Article I of the New York State Constitution; his U.S. constitutional claims under Article VI and the First, Fifth, and Fourteenth Amendments; and his RFRA claim. Plaintiff has defied two prior dismissal orders barring him from bringing forth any claims other than his employment discrimination claims under Title VII, the NYSHRL, and the NYCHRL. *See* ECF No. 6 at 8; ECF No. 8 at 3. "District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted." *Palm Beach Strategic Income LP v. Salzman*, 457 Fed. App'x 40, 43 (2d Cir. 2012) (collecting cases); *Pagan v. N.Y. State Div. of Parole*, No. 98-CV-5840, 2002 WL 398682 (S.D.N.Y. Mar.13, 2002) (granting motion to dismiss with prejudice as to new state law claims alleged in amended complaint when court's order granted plaintiff leave to replead only his § 1981 and NYSHRL claims).

Moreover, Plaintiff's Title VII claims fail against all Individual Defendants because there is no individual liability for Title VII claims. *See Spiegal v. Sculmann*, 604 F.3d 72, 79 (2d Cir. 2010) (finding that there is no individual liability under Title VII); *Tomka v. Seiler Corp.*, 66

F.3d 1295, 1313 (2d Cir. 1995) ("We now hold that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII.").

The Court therefore first considers Plaintiff's federal claims only as to H+H.  As explained below, Plaintiff's federal religious discrimination claims survive, his federal religious-based hostile work environment claim fails, and his federal employment discrimination claims fail.  The Court next considers Plaintiff's remaining NYSHRL and NYCHRL claims, finding that they all survive as to all Defendants.  As for Plaintiff's motion for sanctions, the Court does not find that sanctions against Defendant are warranted.  Finally, because Plaintiff has been granted multiple opportunities to replead and his dismissed claims could not plausibly be alleged in this action, the Court declines to grant leave to further amend as further amendment would be futile.

## I.    Plaintiff's Title VII Religious Discrimination Survives

"In order to survive a motion to dismiss for a Title VII discrimination claim, 'a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.'" *Kueh v. New York & Presbyterian Hosp.*, No. 23-CV-666, 2024 WL 4882172, at *3 (S.D.N.Y. Nov. 25, 2024) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015)).  Title VII defines "religion" as including "all aspects of religious observance and practice, as well as belief," and imposes an obligation on an employer "to reasonably accommodate to an employee's . . . religious observance or practice" unless doing so would cause "undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).

To establish a prima facie case of religious discrimination for failure to accommodate, Plaintiff must show that (1) he held a "bona fide religious belief conflicting with an employment

requirement"; (2) he informed his employer of this belief; and (3) he was "disciplined for failure to comply with the conflicting employment requirement." *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) (quoting *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)). "[W]hen an employee has a genuine religious practice that conflicts with a requirement of employment," the employer "must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) (citing *Knight*, 275 F.3d at 167). "An accommodation is said to cause an undue hardship whenever it results in more than a de minimis cost to the employer." *Baker*, 445 F.3d at 548. Showing "undue hardship" is a "fact-specific inquiry[.]" *See Groff v. DeJoy*, 600 U.S. 447, 468 (2023) (internal quotation marks omitted).

By submitting a request to H+H be exempted from the COVID-19 vaccine requirement based on his religious beliefs, Plaintiff demonstrates that (1) he held a bona fide religious belief in tension with the H+H vaccination requirement and (2) he informed H+H of this belief. *See* Smith Decl., Ex. B, ECF No. 46-4 at 6–7. As for the third prong, it is plausible that Plaintiff's eventual termination following the end of his unpaid leave constitutes discipline for failure to comply with the vaccine requirement. *See id.* at 8; *see also Corrales v. Montefiore Med. Ctr.*, No. 22-CV-3219, 2023 WL 2711415, at *5–6 (S.D.N.Y. Mar. 30, 2023) (finding that plaintiff sufficiently pled a prima facie case for failure to accommodate religious discrimination where the form of discipline was termination). Drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has put forth a prima facie claim of failure to accommodate under Title VII.

In response, Defendants generally argue that Plaintiff was not singled out for his religious views, but instead because of his "failure to comply with an entirely lawful and valid regulation

that mandated all healthcare workers within the state of New York to be vaccinated against the COVID-19 virus." ECF No. 45-2, Defs.' Br. at 9–10. Defendants further contend that even though Section 2.61 did not expressly permit a religious exemption, H+H nevertheless accepted Plaintiff's exemption request and offered the temporary accommodation of job-protected leave without pay until H+H concluded that it could not extend the accommodation beyond November 26, 2021. *Id.* at 10.

The accommodation was not extended because H+H found that the presence of an unvaccinated staff member posed a threat to H+H's staff and patients and that Plaintiff's role could not be performed on a fully remote basis. *See* Smith Decl., Ex. B, ECF No. 46-4 at 7. H+H also contended that "[e]ven if, *arguendo*, some temporary remote arrangement had been deemed feasible (which it was not), the nature of [Plaintiff's] exemption request would have required a remote arrangement in perpetuity, which was not reasonable." *Id.*

Plaintiff notes other possible alternatives to a leave of absence—such as telework, the use of a face mask, or periodic COVID-19 testing—which the Court construes are reasonable accommodations that Plaintiff thinks H+H could have provided. *See* FAC Supp. at 16. Moreover, Plaintiff flatly challenges Defendants' "patently false and untenable sole basis that the presence of unvaccinated staff at the [H+H] work locations poses an undue burden and direct threat to staff and patients." *See* Pl.'s Opp. at 2.

"Determining the nature of [Plaintiff's] role and the nature of hardship to [H+H] require fact-intensive inquiries which [the Court] cannot resolve on a motion to dismiss." *Kueh*, 2024 WL 4882172 at *6; *see also Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transportation Auth.*, 11 F.4th 55, 62 (2d Cir. 2021) ("[T]he reasonableness of an accommodation is a fact-specific question that often must be resolved by a factfinder.") (internal quotations marks

omitted).  With all factual inferences drawn in Plaintiff's favor at the motion to dismiss stage, the Court concludes that "it is plausible that [Plaintiff] can perform his role remotely without presenting a substantial burden in the context of [H+H's] business."  *Kueh*, 2024 WL 4882172 at *6.  Therefore, Plaintiff's Title VII religious discrimination claim survives.

## II.    Plaintiff's Title VII Hostile Work Environment Claim Fails

The Court next considers whether Plaintiff experienced a hostile work environment on account of his religious beliefs.  To plausibly state a hostile work environment claim under Title VII, a plaintiff must plead "that the complained of conduct (1) is objectively severe or pervasive — that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristic."  *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015).

Plaintiff alleges that he was "subjected to unspeakable indignities and a very hostile work environment," on account of both his national origin and sincerely held religious beliefs.  FAC Supp. at 2.  With respect to a hostile work environment on account of his religious beliefs, Plaintiff's only allegations are that he received an email from Barbara Marrero giving him advance notice of his relief from duty and that he and other nonvaccinated employees were harassed and threatened with termination, which he deems "prima facie evidence of a hostile work environment."  *Id.* at 36.

Plaintiff's allegations relate to the imposition of the vaccine mandate and, even when liberally construed, do not reflect any religious animus.  *See Grimes v. New York & Presbyterian Hosp.*, 23-CV-652, 2024 WL 816208, at *11–12 (S.D.N.Y. Feb. 26, 2024) (denying motion to dismiss Title VII religious discrimination, but dismissing religious-based Title VII hostile work

environment claim in light of vague, limited, and conclusory allegations of religious animus). Such limited allegations about religious-based hostility in Plaintiff's pleadings do not plausibly suggest that he was a victim of hostile work environment on account of his religion. Consequently, Plaintiff's hostile work environment claim fails.

### III.    Plaintiff's Title VII National Origin-Based Discrimination Claims Fail

To state a claim of national origin discrimination under Title VII, "[a] [p]laintiff must plead facts showing that he suffered an 'adverse employment action' based on [his] national origin." *Baez v. New York*, 56 F. Supp. 3d 456, 466 (S.D.N.Y. 2014) (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)). Adverse employment actions include "termination of employment, demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Sanders v. N.Y. City Human Res. Admin*, 361 F.3d 749, 755 (2d Cir. 2004) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

Moreover, "[a]n adverse employment action can be shown to have occurred under circumstances giving rise to an inference of discrimination through evidence of, inter alia, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Eka v. Brookdale Hosp. Med. Ctr.*, 247 F. Supp. 3d 250, 265 (E.D.N.Y. 2017). (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). Additionally, "[n]aked assertions of [ ] discrimination . . . without any specific allegation of a causal link between the [d]efendants' conduct and the [p]laintiff's [membership in a protected class], [are] too conclusory to withstand a motion to dismiss." *Gaddy v. Waterfront Comm'n*, No. 13-cv-

3322, 2014 WL 4739890, at *5 (S.D.N.Y. Sept. 19, 2014) (internal quotations marks and citations omitted).

In the FAC, Plaintiff alleges:

I was subjected to unconscionable marginalization, victimization and exploitation, including the deliberate discriminatory refusal to pay me fair and commensurate salary, subversion of my managerial cadre employment as Assistant Director and refusal to promote me, along with an utterly hostile work environment from 2006 to 2021, on the basis of my national origin and sincerely held religious beliefs (on account of Divine Revelations I published as a Servant of God). Fe Baun, the Departmental Director, being a Filipino, discriminatorily delegated departmental managerial authority in my stead to non-managerial cadre members of staff who were Filipinos like herself!

FAC at 4. Defendants argue that Plaintiff's allegations are too conclusory to sufficiently support an inference of national origin-based discrimination. The Court disagrees. Construed liberally, Plaintiff plausibly alleges the adverse employment action suffered by Plaintiff was that he was passed over for promotion and not given managerial authority while serving as an Assistant Director at Lincoln Hospital. *See* FAC Supp. at 3–5. Plaintiff also plausibly alleges that Filipino employees were treated more favorably than Plaintiff who claims Nigerian origin. *See id.*; FAC at 4. Taken together, the Court finds an inference of national origin-based discrimination.

Moreover, Plaintiff cites a few instances of a hostile work environment in connection with his national origin since 2006. FAC Supp. at 2. He notes his former supervisor's insistence that Plaintiff transfer to another hospital, implying that he was not welcome at his workplace. *Id.* Plaintiff also alleges that the supervisor excluded him from an interdepartmental meeting and that another department member was assigned to represent the department at the meeting. *Id.*

However, Plaintiff faces an insurmountable obstacle: he did not allege discrimination based on national origin in his June 15, 2022 EEOC Charge. *See* Smith Decl., Ex. B, ECF No. 46-3 at 2–3. "Under Title VII, a complainant must 'exhaust' [their] administrative remedies by

filing a complaint with the EEOC or an authorized state agency prior to the commencement of a Title VII action in federal court, and that complaint must name the defendant." *Belyea v. City of Glen Cove*, 2022 WL 3586559, at *9 (E.D.N.Y. Aug. 22, 2022) (citing *Edo v. Antika Pizzeria Astoria, Inc.*, 852 F. App'x 618, 619 (2d Cir. 2021)) ("Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency.") (internal citation omitted) (collecting cases); *Duplan v. City of New York*, 888 F.3d 612, 624 (2d Cir. 2018) ("Exhaustion is 'an essential element of Title VII's statutory scheme.'") (quoting *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018))).

A claim that was not raised in an EEOC charge nevertheless "may be brought in federal court if they are reasonably related to the claim filed with the agency." *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 110 n.5 (2d Cir. 2018) (en banc) (alteration in original) (internal quotations and citation omitted). "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'" *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 158 (2d Cir. 2008) (internal quotations and citation omitted); *see also Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 649 (2d Cir. 2011) ("A new allegation will be considered reasonably related if the administrative charge provided the EEOC with sufficient notice to investigate the allegation.") (citing *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006)).

Here, Plaintiff's EEOC Charge states that the alleged discrimination is based on religious discrimination and does not at all mention Plaintiff's national origin. *See* Smith Decl., Ex. A, ECF No. 46-3 at 2–3. H+H's Position Statement only discusses Plaintiff's alleged religion-based discrimination and not any national origin-based discrimination. *See* Smith Decl., ECF No. 46-3

at 3.  The Court finds no evidence that the EEOC was put on "adequate notice" as to Plaintiff's national origin-based discrimination claims.  *See Ximines*, 516 F.3d at 158; *Littlejohn*, 795 F.3d at 323–24 (affirming dismissal of a Title VII sexual harassment claim when the sexual harassment allegations did not appear in an EEOC charge alleging race and color discrimination).  Therefore, the Court dismisses this claim upon a finding that Plaintiff failed to exhaust his administrative remedies under Title VII.

## IV.    Plaintiff's NYSHRL and NYCHRL Claims Survive

The Court next considers whether Plaintiff's remaining religious discrimination and hostile work environment claims brought under the NYSHRL and NYCHRL—attributable to all Defendants—survive Defendants' motion to dismiss.

The NYSHRL and NYCHRL set forth that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer" to discriminate against an individual because of her "creed." N.Y. Exec. Law § 296(1)(a); N.Y.C. Admin. Code § 8-107(1)(a)(3).  To survive a motion to dismiss a NYCHRL discrimination claim, a plaintiff must plead that "she was treated less well, at least in part for a discriminatory reason."  *Verne v. New York City Dep't of Educ.*, No. 21-CV-5427, 2022 WL 4626533, at *17 (S.D.N.Y. Sept. 30, 2022).

In 2019, the NYSHRL was amended "to direct courts to construe the NYSHRL, like the NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed.'"  *Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 335 n.3 (S.D.N.Y. 2024) (quoting N.Y. Exec. Law § 300).  "[I]t is as of yet unclear whether these two standards are co-extensive, or whether the NYSHRL requires something in between federal and local law for discrimination claims."  *Id.* (citation omitted).

The NYSHRL permits an employee to be held liable for aiding and abetting a liable employer. *See, e.g., Baptiste v. City Univ. of N.Y.*, No. 22-CV-2785, 680 F.Supp.3d 415 (S.D.N.Y. June 29, 2023) ("[Individual defendants] can be held liable under the state statute only on an aider-and-abettor theory."); *Bueno v. Eurostars Hotel Co., S.L.*, No. 21-CV-535, 2022 WL 95026, at *7 (S.D.N.Y. Jan. 10, 2022) ("[U]nder the NYSHRL, individual employees may be liable for aiding and abetting discriminatory conduct.").

Meanwhile, "the NYCHRL extends liability to employees, not just employers[.]" *Nezaj*, 719 F. Supp. 3d at 330. (citing *Doe v. Bloomberg L.P.*, 143 N.Y.S.3d 286, 292 (2021)) (employees "may incur liability [under the NYCHRL] [ ] for their own discriminatory conduct, for aiding and abetting such conduct by others, or for retaliation against protected conduct."). "Therefore, an individual defendant, although not qualifying as an employer, may be held liable for discrimination [under the NYCHRL] either (1) directly, for his own participation in discrimination, or (2) for aiding and abetting other liable persons (including the employer)." *Id.* (citing *Charles v. City of New York*, No. 21-CV-5567, 2023 WL 2752123, at *7 (S.D.N.Y. Mar. 31, 2023)).

### a. Plaintiff's Religious Discrimination Claims Survive as to All Defendants

Because Plaintiff has met the more stringent Title VII standard for pleading a claim of religious discrimination, his religious discrimination claims against H+H survive the less stringent NYSHRL and NYCHRL standards. *See Gahfi v. New York City Dep't of Educ.*, No. 23-CV-1782, 2025 WL 675933, at *7 (E.D.N.Y. Feb. 28, 2025) ("Regardless of the exact standard to be applied in the NYSHRL context, because plaintiff has met the higher Title VII standard for pleading a claim of religious discrimination, her claim under the 'more lenient' NYSHRL and NYCHRL also survive.").

As to individual liability, although Plaintiff does not plead an aider-and-abettor theory explicitly, the Court construes Plaintiff's allegations as to the Individual Defendants as supporting such a theory. For the Individual Defendants to be liable for aiding and abetting discrimination, Plaintiff must adequately "[plead] facts sufficient to raise an inference that [the Individual Defendants] actually participated in the plaintiff's termination[]. This is "the kind of direct, purposeful participation that aiding and abetting liability requires." *See Bonaffini v. City Univ. of New York*, No. 20-CV-5118, 2021 WL 2895688, at *3 (E.D.N.Y. July 9, 2021).

Here, Plaintiff claims that Katz, Pagan, and Villanueva were "directly and ultimately responsible for promulgating and enforcing all the policies and managerial decisions of New York City Health & Hospitals Corporation." *See* FAC Supp. at 36. Plaintiff also alleges that Roker is "an officer and representative of [the] employer" who "[had] to enforce the NYS and Federal Government (CMS) Vaccine Mandate for Healthcare Workers." *See id.* at 35. Plaintiff further alleges that Barbara Marrero sent an email detailing Plaintiff's relief from duty. *Id.* at 36. Having adequately pleaded facts sufficient to raise an inference that each Individual Defendant participated in his termination as a result of religious discrimination, the NYSHRL religious discrimination claims against the Individual Defendants survive. Moreover, under the same analysis, the Court concludes that Plaintiff has also demonstrated that the Individual Defendants "aid[ed] and "abett[ed] other liable persons (including the employer)" such that the NYCHRL claims also survive. *See Bloomberg L.P.*, 143 N.Y.S.3d at 292.

**b. Plaintiff's Hostile Work Environment Claims Survive as to All Defendants**

"In contrast to the Title VII standard, the NYSHRL provides for liability on a claim of hostile work environment based on a plaintiff being subjected to inferior terms, conditions or

privileges of employment because of the individual's membership in one or more . . . protected categories." *Gahfi*, 2025 WL 675933, at *8 (citations omitted).

A NYCHRL claim survives if a plaintiff adequately alleges "unequal treatment based upon membership in a protected class." *Spencer v. Glob. Innovative Grp., LLC*, No. 17-CV-7604, 2023 WL 6633860, at *9 (S.D.N.Y. Oct. 12, 2023) (internal quotation marks and quotations omitted). "This is the same standard as the NYCHRL's discrimination standard." *Gahfi*, 2025 WL 675933, at * 8 (citing *Adams v. Equinox Holdings, Inc.*, 662 F. Supp. 3d 444, 459 n.11 (S.D.N.Y. 2023), *aff'd*, No. 23-608, 2024 WL 1787108 (2d Cir. April 25, 2024). Because Plaintiff has adequately pleaded NYCHRL religious discrimination claims as to all Defendants, it follows that his NYCHRL hostile work environment claims also survive.

As to the NYSHRL, as discussed above, "it is as of yet unclear whether these two standards are co-extensive, or whether the NYSHRL requires something in between federal and local law for discrimination claims." *Nezaj*, 719 F. Supp. 3d at 335 n.3. Because "the amended NYSHRL standard is, at the very least, closer to the NYCHRL standard," and "in order to view the Amended Complaint in the light most favorable to Plaintiff," at this stage, the Court will apply the NYSHRL as coextensive with NYCHRL. *Kulick v. Gordon Prop. Grp.*, LLC, No. 23-CV-9928, 2025 WL 448333, at *8 (S.D.N.Y. Feb. 7, 2025) (internal quotation marks and quotation omitted). Having found that the NYCHRL hostile work environment claims against all Defendants survive Defendants' motion, the Court applies the same standard in denying dismissal of the NYSHRL hostile work environment claims as to all Defendants.

## V.    Plaintiff's Request for Sanctions is Baseless

"Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact,

legally tenable, and 'not interposed for any improper purpose.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (citing Fed. R. Civ.11).  Rule 11 serves to "deter baseless filings in District Court . . . [and] streamline the administration and procedure of the federal courts." *See id.*  The Second Circuit has cautioned that "Rule 11 sanctions should be 'made with restraint."  In deciding whether sanctions should be imposed under Rule 11, courts apply an objective standard of reasonableness.  *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1344 (2d Cir. 1991).  Sanctions are appropriate "when it appears that a competent attorney could not form the requisite reasonable belief as to the validity of what is asserted in the paper" but courts must "avoid hindsight and resolve all doubts in favor of the signer."  *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir.1986), cert. denied, 480 U.S. 918 (1987).

Plaintiff argues that Defendants committed sanctionable conduct by (1) representing that Plaintiff received an exemption from H+H's vaccine policy (Plaintiff argues the exemption was only temporary) and (2) submitting briefing made up of "Conclusory Statements lacking any iota of substantiation with facts; in contradistinction to Plaintiff's Submissions that are amply supported[.]"  ECF No. 60 at 1, 5–7.

Based on the evidence before the Court, Plaintiff's requests are baseless.  The Court does not find that Defendants' papers are not well-grounded or were filed for any improper purpose.  The Court views Plaintiff's as essentially a surreply to Defendants' arguments on the merits of the case.  Especially with the benefit of full briefing on the motion, the Court strains to identify any harm for Plaintiff or any reason that sanctions should issue.

## VI. The Court Declines to Grant Plaintiff Leave to Further Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to

21

amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,' "among other reasons." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has amended his pleadings four times. In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.").

Further, Plaintiff has not asked to amend again or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this ruling. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result).

Indeed, any further amendment to try to save Plaintiff's now-dismissed claims would be futile because "[t]he problem[s] with [Plaintiff's] causes of action [are] substantive," and "better pleading will not cure [them.]" *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Indeed, Plaintiff cannot adequately allege: (1) Title VII claims against the Individual Defendants because there is no individual liability under Title VII; (2) Title VII hostile work environment

claims against H+H because the numerous amended complaints have not plausibly alleged these claims; (3) Title VII national origin discrimination claims because Plaintiff did not allege national origin discrimination in his EEOC Charge; and (4) any claim previously dismissed by order of the Court.  The Court therefore declines to grant Plaintiff further leave to amend.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the FAC is **DENIED** in part and **GRANTED** in part.  In summary, only the following claims survive:

- Title VII religious discrimination claim only as to H+H;
- NYSHRL religious discrimination claims as to all Defendants;
- NYCHRL religious discrimination claims as to all Defendants;
- NYSHRL hostile work environment claims as to all Defendants; and
- NYCHRL hostile work environment claims as to all Defendants.

Further, because Plaintiff is denied the opportunity to further amend, the Court **ORDERS** that the Defendants file their Answer to the FAC within twenty-one (21) days of the entry of this order..  Additionally, Plaintiff's frivolous request for sanctions is **DENIED**.  The Clerk of Court is respectfully directed to terminate Defendants' motion at ECF No. 46.

**SO ORDERED.**

**Dated: March 26, 2025**
**New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**